**Robert H. DOUGHERTY, et al.,
Plaintiffs–Appellants,**

v.

**CHRYSLER MOTORS CORPORATION,
Defendant–Appellee.**

No. 87–1266.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 14, 1988.
Decided Feb. 24, 1988.

Donald J. Gasiorek, David A. Kotzian (argued), Sommers, Schwartz, Silver and Schwartz, P.C., Southfield, Mich., for plaintiffs-appellants.

Robert P. Young (argued), Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., Michael L. Johnson, for defendant-appellee.

Before ENGEL, KENNEDY and KRUPANSKY, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Plaintiffs appeal from summary judgment granted to defendants in this ERISA suit for breach of fiduciary duty. The District Court, 652 F.Supp. 1529 (1987) found that defendants Chrysler Motors Corporation and Chrysler Pension Plan had complied with the provisions of ERISA. We affirm.

In 1980, Chrysler created Chrysler Defense, Inc. (CDI), a wholly owned subsidiary, and transferred all Chrysler's defense operations to it. The Chrysler Corporation Pension Plan (Chrysler Plan) covered CDI employees until March 2, 1982, when Chrysler created a separate CDI Plan. Chrysler transferred to the CDI Plan pension liability for CDI employees and for retirees from any Chrysler facility that had become part of CDI. Chrysler transferred sufficient assets from the Chrysler Plan to the CDI Plan to provide accrued benefits equal to those prescribed by the Chrysler Plan at the time of the transfer.

On March 16, 1982 Chrysler sold CDI, including the assets and liabilities of the CDI Plan, to General Dynamics Corporation, which renamed CDI the General Dynamics Land Based Systems Division (GDLSD), and renamed the CDI Plan the GDLSD Plan. Accrued benefits under this Plan were equal to those under the Chrysler Plan in effect at the time of transfer.

The three plaintiffs were all salaried employees of Chrysler's defense operations. Plaintiff Dougherty retired from Chrysler before these events took place; plaintiff Robinson retired as a GDLSD employee; and plaintiff Cotter is still a GSLSD employee. The GDLSD Plan holds the assets and bears the liability for the pension of each plaintiff.

The basis of plaintiffs' complaint is that the pension benefits under the GDLSD Plan have not increased since 1982, whereas benefits under the Chrysler Plan have increased during that time. Plaintiffs argue that Chrysler breached its fiduciary duty by not ensuring that, and indeed never considering whether, benefits under the new plan would be as likely to be increased as would those under the Chrysler Plan. Plaintiffs rely on section 404(a), the "general fiduciary duty" provision of ERISA, which requires that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan.

29 U.S.C. § 1104(a)(1)(A).

We agree with the District Court that the sale of a business or portion of a business does not impose a fiduciary duty on an employer to guarantee future, nonvested, benefits. *See Coleman v. General Electric,* 643 F.Supp. 1229, 1239 (E.D.Tenn. 1986) *aff'd,* 822 F.2d 59 (6th Cir.1987); *see also Sutton v. Weirton Steel,* 567 F.Supp. 1184 (N.D.W.Va.), *aff'd,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *Phillips v. Amoco Oil,* 614 F.Supp. 694 (N.D.Ala. 1985), *aff'd,* 799 F.2d 1464 (11th Cir.1986); *Turner v. CF & I Steel Corp.* 770 F.2d 43 (3rd Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). The future increases denied to plaintiffs were not vested. They were not part of the Chrysler Plan; rather they were, and are,

voluntarily granted periodically by Chrysler.[1]

Plaintiffs contend however that a fiduciary duty does exist because these periodic increases were forseeable and became a *de facto* part of the Chrysler Plan. In reality, plaintiffs are advancing a common law breach of contract theory based on reliance.

Any such contract cause of action is preempted by section 514(a) of ERISA, which provides that ERISA is to supercede all state laws insofar as they may "relate to any employee benefit plan," 29 U.S.C. § 1144(a). The term "relate to" must be given its "broad common-sense meaning," *Pilot Life Insurance Co. v. Dedeaux,* —— U.S. ——, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). "[T]he pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans,'" *id.,* quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). *See also Coleman v. General Electric, supra.*

We agree with the District Court that Chrysler's obligation as a fiduciary must be defined by reference to ERISA. Section 208 governs this situation:

> A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan ... unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated).

29 U.S.C. § 1058.

It is undisputed that Chrysler complied with this provision. At the time of the transfer to the GDLSD Plan, these plaintiffs would have received the same benefits had the plan terminated as they would have received if they had remained in the Chrysler Plan or the CDI Plan and those plans had then terminated. That is the protection that Congress intended for pensions and other benefit plans when it passed ERISA.[2]

The judgment of the District Court is affirmed.

---

1. It appears that Chrysler increases the benefits available to salaried employees, such as plaintiffs, when, as a result of collective bargaining, it increases the benefits under the Plans covering unionized employees.

2. As defendants point out, to accept plaintiff's theory would have the ironic effect of encouraging companies to terminate plans rather than continue them in situations where employers transfer corporate assets.